IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

STEVEN J. CORBETT,

                      Plaintiff,            Civil Action No.
     v.                             7:08-CV-1248 (TJM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

_____

APPEARANCES:               OF COUNSEL:

FOR PLAINTIFF:

CONBOY, McKAY LAW FIRM     LAWRENCE D. HASSELER, ESQ.
407 Sherman Street
Watertown, New York 13601

FOR DEFENDANT:

HON. ANDREW T. BAXTER      SIXTINA FERNANDEZ, ESQ.
UNITED STATES ATTORNEY    Special Assistant U.S. Attorney
Post Office Box 7198
100 South Clinton Street
Syracuse, New York, 13261-7198

DAVID E. PEEBLES
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

     Plaintiff Steven J. Corbett, who claims to be disabled and unable to

work due principally to a lumbar spine condition, as well as osteoarthritis

of the knees and left ankle, has commenced this proceeding pursuant to

42 U.S.C. § 405(g) seeking judicial review of a determination by the Commissioner of Social Security finding that he was not disabled and therefore ineligible for Title II disability insurance benefits ("DIB") under the Social Security Act ("Act") between February 3, 2005, the date of the alleged disability onset, and October 31, 2007, when he was deemed to have become disabled as a result of a combination of his medical conditions and having turned fifty on that date.  In support of his challenge, plaintiff maintains that the administrative law judge ("ALJ") assigned to hear and determine the matter failed to properly assess his medical condition and to conclude that it met or medically equaled one of the listed, presumptively disabling conditions set forth in the regulations, and that her finding that there is available work which plaintiff is capable of performing, notwithstanding his medical conditions, was based upon a determination concerning his residual functional capacity ("RFC") that is not supported by substantial evidence and improperly overlooks his subjective complaints of pain and other disabling symptoms.  As relief, plaintiff seeks a court determination that he was disabled at the relevant times or, in the alternative, that the Commissioner's determination be vacated and the matter remanded to the agency for further consideration.

Having carefully reviewed the record in light of plaintiff's arguments, and applying the requisite standard of deferential review, I find that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, I recommend dismissal of plaintiff's challenge to the Commissioner's determination.

I.    BACKGROUND

Plaintiff was born on October 31, 1957; at the time of the ALJ's decision in the matter, plaintiff was fifty years old. Administrative Transcript at pp. 50, 72, 309.[1] Plaintiff is married and has two children. AT 50-51. Plaintiff graduated from high school and thereafter attained an Associate's Degree from Jefferson Community College. AT 309.

From October 17, 1988 through February 3, 2005, plaintiff worked as a corrections officer for the New York State Department of Correctional Services. AT 65, 310. In that position, plaintiff was responsible for supervising a unit housing fifty prison inmates, monitoring their movements, inspecting the housing unit, enforcing prison rules, and

---

[1]      Portions of the administrative transcript (Dkt. No. 6), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence before the agency when its decision was made, will be cited hereinafter as "AT ___."

3

ensuring the safety and security of inmates and employees at the facility. AT 65, 310-11.  Plaintiff stopped working as a result of a workplace accident occurring on February 3, 2005 when, while lifting a large case of toilet tissue, he twisted and injured his back.  AT 311.

        1.    <u>Back Pain</u>

The medical evidence in the record reveals that plaintiff has undergone considerable treatment for his back condition, some of which predated his February 3, 2005 workplace accident.  X-rays taken on November 26, 2004, prior to plaintiff's accident, revealed diffuse degenerative disc disease at each lumbar level, with the exception of L1-L2.  AT 152.  Those x-rays also disclosed osteoarthritic facet hypertrophy bilaterally at L5-S1 and on the right at L4-L5.  *Id.*

On the day of his accident plaintiff was seen at an urgent care facility in Watertown, New York, complaining of acute low back pain.  AT 118.  X-rays taken of plaintiff's lower back on that occasion revealed no significant changes when compared to those from November of 2004.  AT 178.

Following his accident, plaintiff sought treatment from Dr. Paul S. Curtis, an orthopedist with whom he treated through at least December of

4

2007.  AT 178-217, 271-91.  At the outset of that treatment Dr. Curtis diagnosed the plaintiff as suffering from lumbar nerve root irritation, a condition most likely attributable to a discogenic injury.  AT 180.  Plaintiff was prescribed Neurontin and continued on Naprosyn but rejected any prescription pain medication, stating that he would rather utilize over-the-counter medication as needed.[2, 3]  *Id.*

On March 24, 2005, after reporting to Dr. Curtis that the low back pain radiating into his right leg had worsened and that it had not responded to treatment, *see* AT 184-85, plaintiff underwent magnetic resonance imaging ("MRI") testing of his lumbar spine, disclosing a diffuse circumferential disc bulge at Level L2-L3, causing a moderate impression upon the anterior thecal sac and with moderate encroachment upon the neural foramen bilaterally at L2-L3.  AT 186-87.  The MRI test results further demonstrated very mild diffuse disc bulging at L3-L4 and a diffuse disc bulge with evidence of broad disc protrusion and moderate

---

[2]     Neurontin is a preparation of gabapentin, an anticonvulsant that is the structural analogue of γ-aminobutyric acid used as adjunctive therapy in the treatment of partial seizures.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 764, 1287 (31st ed. 2007).

[3]     Naprosyn is a preparation of naproxen, a nonsteroidal anti-inflammatory drug that is a proprionic acid derivative used the treatment of pain, inflammation and osteoarthritis, among other things.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1251 (31st ed. 2007).

encroachment upon the neural foramen bilaterally at L4-L5.  *Id.*  A review of level L5-S1 also revealed a mild diffuse disc bulge.  *Id.*

Plaintiff continued to treat with Dr. Curtis periodically through at least December of 2007.  AT 178-217, 271-91.  While under the care of Dr. Curtis, the plaintiff underwent various courses of treatment, including physical therapy, medications, and trigger point epidural injections, with little or no relief.  *See, e.g.* 203-04, 207, 280-81.  In December of 2007, Dr. Curtis noted that he had little to further offer the plaintiff in terms of treatment options and that when he began treating Corbett he regarded plaintiff as being subject to a "marked partial disability", but by that time the disability, in all likelihood, had become permanent.  AT 290.

Plaintiff's back condition was also orthopedically evaluated by Dr. Paul S. Carton, a board-certified orthopedic surgeon, who conducted an independent medical examination for the purposes of plaintiff's worker's compensation matter on May 4, 2005.  AT 119-22.  After examining the plaintiff, Dr. Carton reported a diagnosis of acute traumatic low back sprain/strain, with evidence of disc protrusion at L4-L5 and moderate encroachment upon the neural foramen bilaterally.  AT 121.  Based upon his findings, Dr. Carton recommended that plaintiff be referred to a pain

6

management center for epidural steroid injections. *Id.*  In addition, Dr. Carton opined that while plaintiff was not capable of working as a corrections officer, he could engage in sedentary activity, provided that he had the ability to stand, sit, and change positions as dictated by his pain, and could avoid any lifting or repetitive bending. *Id.*

On July 21, 2005, plaintiff consulted with Lawrence M. Littell, D.O., Ph.D., of ProHealth in Watertown, New York, for pain management and treatment.  AT 167-69.  Based upon plaintiff's reports regarding his symptomology and physical examination of the plaintiff, Dr. Littell recorded his impression that plaintiff suffered from lower back and bilateral leg pain, myofascial pain syndrome, sacroiliitis, lumbar radiculopathy, and degenerative disc disease with lumbar stenosis.  AT 169.  From October through December of 2005, Dr. Littell administered epidural injections and prescribed Lyrica for plaintiff's pain.[4]  AT 171-77.  In December of 2005, Dr. Littell noted that plaintiff's leg pain had not improved.  AT 177.

On July 25, 2005, at the request of Dr. Curtis, Dr. William A. Stewart, a professor of clinical neurosurgery at the State University of

---

[4]      Lyrica is a preparation of pregabalin, a derivative of ɣ-aminobutyric acid having anticonvulsant and antinocieptive effects. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1104, 1531 (31st ed. 2007).

7

New York Upstate Medical University, evaluated Corbett for the purpose of providing a second opinion.  AT 123-26.  Upon examining the plaintiff and results of MRI testing, Dr. Stewart noted that there was no paravertebral muscle spasm but did find tenderness bilaterally in the lumbosacral region.  AT 125.  Dr. Stewart diagnosed the plaintiff as suffering from degenerative disc disease, most prominently at L2-L3 but additionally at the lower levels.  *Id.*  Dr. Stewart advised plaintiff that he needed to lose approximately twenty-five pounds and recommended physical therapy, including electric stimulation, transcutaneous electrical nerve stimulation, and heat massage treatments.  AT 126.

On September 28, 2005, plaintiff underwent another independent medical examination for the purposes of worker's compensation, conducted by Dr. Eduardo V. Alvarez, a board-certified orthopedist.  AT 162-66.  During that examination plaintiff complained of constant pain and stiffness of his lower back radiating into his hips and down both of his legs and added that he could not sit or stand for more than fifteen minutes.  AT 163.  Dr. Alvarez described plaintiff's gait as slow and guarded; he found that the range of motion in plaintiff's cervical spine was normal in all directions, but the range of motion in his lumbosacral spine was limited by

8

complaints of pain to forty-five degrees of flexion, ten degrees of extension, twenty degrees of right and left lateral bending, and thirty degrees of right and left rotation. *Id.* Based upon his examination and review of plaintiff's medical records, Dr. Alvarez diagnosed plaintiff as suffering from a sprain/strain of his lumbosacral spine with multilevel degenerative disc disease and L4-L5 hernatied nucleus pulposus, and recommended a series of three lumbar epidural steroid injections as an appropriate course of treatment, finding no need for surgical intervention. AT 165.

Again at the request of Dr. Curtis, plaintiff was seen by Dr. Abdul Latif, of North Country Neurology, P.C., on October 24, 2005. AT 233-34. Based upon his examination and review of available records, Dr. Latif assessed plaintiff as suffering from chronic low back and bilateral leg pain and lower extremity parethesias, with the need to rule out lumbosacral radiculopathy as opposed to peripheral polyneuropathy. AT 234. A subsequent electromyographical study from December of 2005 revealed bilateral S1 radiculopathy and chronic left L2-L3-L4 radiculopathy. AT 236-37.

Based upon those findings plaintiff was referred by Dr. Latif to the

9

New York Pain Center, where he began receiving treatments  in

December of 2005.  AT 247-48.  Dr. Robert L. Tiso, one of the physicians

at the Pain Center, recorded his initial impression to the affect that plaintiff

suffered from lumbar degenerative disc disease and lumbar spondylosis

without myelopathy.  AT 247-48.   Plaintiff continued receiving treatments

at the pain center every other month from then until October of 2006, and

later continued with those treatments in March, April, May, September,

October, and November of 2007.  AT 247-70.  In a report of plaintiff's visit

to the Pain Center on November 8, 2007, it was noted that he had been

approved for use of a spinal cord stimulator.  AT 270.  Plaintiff was

instructed at that time to return in two months for a follow-up visit.  *Id.*

     2.   <u>Ankle Pain</u>

In December of 2004, while plaintiff was still working, Dr. Edward N.

Powell, M.D., an orthopedist, evaluated him for complaints of bilateral

ankle pain.  AT 218-19.  Upon examination, Dr. Powell noted that plaintiff's

ankles were stable but found hypertrophic changes on the left side.  *Id.*

An x-ray of the right ankle from November of 2004 showed no bony

abnormalities, while an x-ray of the left ankle showed an old fracture with

deformity and what appeared to be early post traumatic arthritis.  *Id.; see*

*also* AT 151.  Dr. Powell opined that plaintiff's ankles had undergone degenerative changes and recommended a course of low-impact exercise. AT 218-19.

    3.   Knee Pain

In or about late 2005, plaintiff also complained to Dr. Curtis of left knee pain. *See, e.g.* AT 214.  X-rays of plaintiff's left knee and bilaterally in December of 2005 revealed tricompartmental marginal osteophytosis with mild narrowing of the patellofemoral joint space in the medial compartment of his left knee, while x-rays of his knees while standing revealed medial and lateral compartmental marginal osteophytosis of the left knee and mild medial compartmental narrowing, with plaintiff's right knee compartments being symmetrical and well-maintained.   AT 210-11, 214-15.  Later during that month, an MRI scan of plaintiff's left knee was conducted, revealing a bucket-handle tear of the medial meniscus, a torn posterior horn of the lateral meniscus, tricompartmental chondromalacia and marginal osteophytosis, subchondral marrow edema involving the medial femoral condyle anteriorly and posteriorly, and joint effusion.  AT 216.

In January of 2006, plaintiff returned to Dr. Powell with complaints of

11

continuing left knee pain.  AT 220.  After examining the plaintiff and reviewing the results of the MRI scan from the previous month, Dr. Powell diagnosed the plaintiff as suffering from osteoarthritis of the left knee, with internal derangement with regard to the meniscus.  *Id.*

Plaintiff's knees continued to bother him into August of 2007.  AT 240.  Plaintiff reported having attempted various forms of exercise, including swimming, biking, walking, and the treadmill, all of which aggravated either his knee or back condition.  *Id.*  Dr. Powell noted patellofemoral crepitance bilaterally and opined that plaintiff suffered from osteoarthritis in both knees, though worse in the left.  *Id.*  Over the course of August, 2007, plaintiff received three injections of Lidocaine[5] and Synvisc[6] in his left knee.  AT 240-41.

### 3.    Consultative Examinations

In January of 2006, James Naughten, D.O. consultatively examined the plaintiff upon referral by the agency.  AT 221-24.  Plaintiff reported to the examiner that his chief complaints were low back pain and left knee

---

[5]    Lidocaine is a drug having anesthetic, sedative, analgesic, anticonvulsant and cardiac depressant activities, used as a local anesthetic.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1048 (31st ed. 2007).

[6]    Synvisc is a preparation of hylan G-F 20, which is used for the treatment of pain in osteoarthritis.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 896, 1879 (31st ed. 2007).

pain, which began after his injury at work in February of 2005, describing

his pain as constant and sharp and eight out of ten in intensity.  AT 221.

During his examination, Dr. Naughten noted that plaintiff exhibited a mild

to moderate limp on his left leg and mild to moderate difficulty walking on

his heels and toes, and observed that plaintiff had mild to moderate

difficulty getting on and off the examination table.  AT 222.  Dr. Naughton

reported plaintiff's lumbar spine flexion as sixty degrees, extension as ten

degrees, and lateral flexion at twenty degrees bilaterally, noting that

plaintiff had lumbar spasm and paralumbar spinal pain as well as

moderate crepitus of both knees.  AT 223.   Dr. Naughten diagnosed

plaintiff as suffering from left knee and low back pain, discerning "[n]o

limitation to seeing, hearing, talking, sitting, or standing.  Mild to moderate

limitations walking and climbing stairs.  No limitation to pushing, pulling, or

reaching," adding that plaintiff was moderately limited in his ability to lift

and carry.  AT 224.

4.    State Agency RFC Assessment

Based upon a review of plaintiff's records, an agency disability

analyst determined that plaintiff can occasionally lift ten pounds and

frequently lift less than ten pounds.  AT 226-31.  The analyst also found

that plaintiff can stand and/or walk for a total of at least two hours, sit for a

total of about six hours in an eight-hour workday, and that he experiences

no limitation in his ability to push and/or pull.  *Id.*  The analyst further found

that plaintiff can frequently balance, stoop, and crouch, can occasionally

climb but never kneel or crawl, and suffers no manipulative, visual,

communicative, or environmental limitations.  *Id.*

II.    PROCEDURAL HISTORY

      A.    Proceedings Before the Agency

On December 1, 2005, plaintiff protectively filed an application for

DIB, claiming that he has been disabled since February 3, 2005 due to a

condition causing lower back pain, which radiates into his hips and legs

and causes numbness in his feet.  AT 50-55, 64-65.  That application was

denied on March 2, 2006 based upon an agency determination that

plaintiff was not disabled.   AT 27-31.

At plaintiff's request, a hearing was held on January 28, 2008,

before ALJ Elizabeth W. Koennecke in Watertown, New York; plaintiff

appeared and testified at the hearing, represented by an attorney.  AT

306-28.  Following the hearing, the ALJ issued a partially favorable

decision on March 13, 2008, in which she found that plaintiff was not

disabled from the alleged onset date of February 3, 2005 through October 30, 2007, but became disabled on October 31, 2007.  AT 12-23.

In her decision, ALJ Koennecke applied the now familiar, five-step test for determining disability.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 3, 2005, the alleged disability onset date.  AT 14.  Proceeding to step two, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine and osteoarthritis of the knees and left ankle were severe impairments, but at step three concluded that they did not, either singly or in combination, meet or medically equal any of the listed, presumptively disabling impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 14-17.

Before proceeding to step four of the disability calculus, the ALJ found that plaintiff retains the RFC to perform a full-range of sedentary work despite his impairments, rejecting as not fully credible plaintiff's claim of experiencing greater limitations than those discerned.  AT 18-21. Applying the RFC finding at step four of the disability analysis, ALJ Koennecke concluded that plaintiff is unable to perform his past relevant work as a corrections officer, presumably as a result of its exertional requirements.  AT 21.

Continuing on to step five of the disability algorithm, in consideration of plaintiff's age, education, work experience, and RFC, and applying the medical-vocational guidelines set forth in the regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P App.2, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform prior to October 31, 2007, the date upon which plaintiff's age category changed from a "younger individual" to "an individual closely approaching advanced age," but that after that date no suitable job existed.  AT 21-22.  The ALJ therefore concluded that plaintiff was not disabled on that date, but became disabled on October 31, 2007, and continued in that status through the date of her decision.  AT 22-23.

The ALJ's decision became a final determination of the agency on November 14, 2008, when the Social Security Administration Appeals Council denied plaintiff's request for review of the ALJ's decision.  AT 4-6.

B.    <u>This Action</u>

Having exhausted his available internal administrative remedies, plaintiff commenced this action on November 19, 2008.  Dkt. No. 1.  Issue was thereafter joined on January 13, 2009, by the Commissioner's filing of an answer, Dkt. No. 7, preceded by the submission on January 12, 2008

of an administrative transcript of the evidence and proceedings before the agency.  Dkt. No. 6.  With the filing of plaintiff's brief on February 5, 2009, Dkt. No. 8, and that on behalf of the Commissioner on March 23, 2009, Dkt. No. 10, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).[7]  *See also* FED. R. CIV. P. 72(b).

III.    DISCUSSION

   A.    Scope of Review

   A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.Supp.2d

---

   [7]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether

the Commissioner applied the proper legal standards, his decision should

not be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence.  *Martone*, 70 F.Supp.2d at 148 (citing

*Johnson*, 817 F.2d at 986).  If, however, the ALJ has applied the correct

legal standards and substantial evidence supports the ALJ's findings,

those findings are conclusive, and the decision should withstand judicial

scrutiny regardless of whether the reviewing court might have reached a

contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;

*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13

F.Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §

405(g).

    The term "substantial evidence" has been defined as "'such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420,

1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,

229, 59 S.Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184

(2d Cir. 2003).  To be substantial, there must be " 'more than a mere

scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S.Ct. at 217); *Martone*, 70 F.Supp.2d at 148 (quoting *Richardson* ).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S.Ct. 456, 464 (1951)).

When a reviewing court concludes that an ALJ has applied incorrect legal standards, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F.Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F.Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted

if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

      B.    <u>Disability Determination - The Five-Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of
> such severity that he is not only unable to do his previous work
> but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of
> whether such work exists in the immediate area in which he

lives, or whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be
employed in determining whether an individual is disabled.  *See* 20 C.F.R.
§§ 404.1520, 416.920.  The first step requires a determination of whether
the claimant is engaging in substantial gainful activity; if so, then the
claimant is not disabled, and the inquiry need proceed no further.  20
C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully
employed, then the second step involves an examination of whether the
claimant has a severe impairment or combination of impairments
significantly restricting his or her physical or mental ability to perform basic
work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is
found to suffer from such an impairment(s), the agency must next
determine at step three whether it meets or equals an impairment listed in
Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also
id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively
disabled."  *Martone*, 70 F.Supp.2d at 149 (citing *Ferraris v. Heckler*, 728
F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

21

assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F.Supp.2d at 150.

C.    The Evidence In This Case

1.    Listing 1.04(A)

At step three of the disability analysis, the ALJ noted that she had carefully reviewed Listings 1.02 and 1.04 and determined that plaintiff's impairments did not meet or medically equal the requirements of either.[8]

---

[8]        While it is obviously the better practice for an ALJ to provide a detailed explanation for his or her findings at this step, the absence of an express rationale

AT 17.   In his challenge, plaintiff contends that the ALJ should have found that his back impairment meets Listing 1.04(A), thereby entitling him to an automatic finding of disability.   The Commissioner counters that the ALJ properly considered plaintiff's impairments in relation to Listing 1.04(A), and properly found that they did not meet or equal its criteria.

At step three of the disability protocol, the ALJ determines whether a claimant's impairment meets or equals "one or a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity."  *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2290 (1987) (citations omitted).  A claimant bears the burden of proof to show that his or her impairments meet or medically equal a listing.  *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y. 2006).  To meet a listing, a claimant's medically determinable impairment must satisfy all of the specified criteria in the Listing.  20 C.F.R. §§ 404.1525(d), 416.925(d).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 895 (1990) (citing

---

does not preclude affirmation of the ALJ's opinion where portions of the ALJ's decision and the evidence before the agency reflect that substantial evidence supports the ultimate conclusion.  *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982).

Social Security Ruling ("S.S.R.") 83-19, 1983 WL 31248).

To make this showing, the claimant must present medical findings that equal in severity all requirements, supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. §§ 404.1526(b), 404.926(b).  Any abnormal physical findings must be shown to persist on repeated examinations despite therapy.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(H).  Moreover, the medical reports should reflect physical limitations based upon actual observations, and not just the claimant's subjective complaints.  *Id.*

Listing 1.04(A) requires the existence of a disorder of the spine, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root, with

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).  In order to satisfy Listing 1.04(A), a claimant must therefore establish that 1) he or she has a disorder of the spine which compromises a nerve root or the spinal cord,

24

and 2) the disorder is manifested by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  *McKinney v. Astrue*, No. 5:05-CV-0174, 2008 WL 312758, at *4 (N.D.N.Y. Feb. 1, 2008) (Kahn, J. & Lowe, M.J.).

Plaintiff argues that he meets all of the required criteria for Listing 1.04(A).  In response the Commissioner offers no argument disputing that plaintiff has a spinal disorder resulting in compromise of a nerve root, neuro-anatomic distribution of pain, limitation of motion of the spine, or a positive straight-leg raising test.  The Commissioner maintains, however, that plaintiff's failure to show evidence of motor loss, atrophy associated with muscle weakness, or muscle weakness, accompanied by sensory or reflex loss, is fatal to his argument.

On this issue, the evidence supports the ALJ's finding.  In February of 2005, Dr. Curtis noted that plaintiff's hip and quadriceps strength was good, that he walked on his heels and toes with adequate strength, and that his reflexes were intact.  AT 182, 184.   In July of 2005, Dr. Littell reported that sensory testing revealed intact lower extremities.  AT 168.

Dr. Littell also found that plaintiff's leg strength was five of five in his left leg, but noted a "give-a-way weakness secondary to pain with right hip flexion" but otherwise his strength was five of five. *Id.* According to Dr. Littell plaintiff's reflexes were "1+ at the right knee, 2 at the right ankle, and 2+ at the left knee and ankle." *Id.*

In July of 2005, upon examination of plaintiff's low back, Dr. Stewart reported no focal weakness and that all modalities were intact. AT 125. In August of 2005, Dr. Curtis noted that plaintiff walked on his heels and toes with adequate strength. AT 195. Dr. Curtis also reported that plaintiff's hip and quadriceps strength was good, and described plaintiff's symptoms as "consistent with nerve root irritation bilaterally" but found him "[o]therwise neurologically intact." AT 196.

In September of 2005, Dr. Alvarez observed that plaintiff showed a slow and guarded gait, but his neurological examination of plaintiff revealed no motor, sensory or reflex changes . AT 163. Dr. Curtis noted, in November of 2005, that plaintiff had some numbness in the lateral aspects of both feet, but described his gait as normal and his hip and quadriceps strength as adequate.[9] AT 207.

---

[9]  Other courts have not equated "numbness" to sensory loss. *See McDaniels v. Comm'r of Social Sec.*, 136 Fed. Appx. 485, 487 (3d Cir. 2005) (noting

Dr. Latif's examination of plaintiff in November of 2005 did not reveal any focal motor weakness in either his upper or lower extremities, and revealed that plaintiff's muscle tone was normal.  AT 235.  In December of 2005, Dr. Curtis noted that plaintiff's sensation was grossly intact to light touch.  AT 214.  One month later, in January of 2006, Dr. Naughten found that plaintiff's leg strength was four out of five and noted no motor or sensory deficits.  AT 223.  In August of 2006 and March and May of 2007, Dr. Tiso and Dr. Catania noted that plaintiff's cranial nerves were grossly intact and that his sensation was normal to touch.  AT 253, 259, 265.

These findings constitute substantial evidence supporting the ALJ's finding that plaintiff did not meet Listing 1.04(A).  There was only conflicting evidence, at best, of muscle weakness and no evidence that plaintiff experienced the necessary motor loss accompanied by sensory or reflex loss.  It is the ALJ's responsibility to weigh all medical evidence and resolve any material conflicts in the record.  *See Richardson*, 402 U.S. at 399, 91 S.Ct. at 1426.  Where evidence is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied,*

---

that claimant reported only numbness in her left hand, not sensory or reflex loss) (cited in accordance with Fed. R. App. Proc. 32.1).

559 U.S. 1212, 103 S.Ct. 1207 (1983).

Based upon the foregoing, I find that substantial evidence exists to support the ALJ's finding that plaintiff did not meet his burden of establishing motor loss accompanied by sensory or reflex loss, as necessary to meet Listing 1.04(A).  *See, e.g., McKinney*, 2008 WL 312758, at *5 (finding the ALJ's decision that the claimant did not meet Listing § 1.04(A) was supported by substantial evidence where the plaintiff did not satisfy all the criteria symptoms of the Listing).

        2.   <u>RFC and Date of Onset</u>

Plaintiff next argues that the ALJ failed to properly assess his RFC. Plaintiff also contends that the ALJ failed to properly determine the onset date of his disability, and specifically that there is no support for the ALJ's determination that plaintiff was able to work from February 3, 2005, the date of his injury, until he turned fifty years old on October 31, 2007, and that only then did his injury qualify as disabling.  In response, the Commissioner maintains that substantial evidence supports the ALJ's finding that from plaintiff's alleged onset date through October 30, 2007, plaintiff retained the ability to perform the full-range of sedentary work, a finding upon which the ALJ's determination of no disability is predicated.

28

AT 18-21 and 21-22.

a)   RFC

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a(b).  Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a(c); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).

When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory

29

statements concerning his or her capabilities, however, will not suffice.

*Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 588).  The ALJ

must note how the "evidence supports each conclusion, citing specific

medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*,

daily activities, observations)" to support each conclusion.  S.S.R. 96-8p,

1996 WL 374184, at *7; *see also Balsamo v. Chater*, 142 F.3d 75, 80-81

(2d Cir. 1998).  Additionally,

> [t]he RFC assessment must first identify the individual's
> functional limitations or restrictions and assess his or her
> work-related abilities on a function-by-function basis, including
> the functions in paragraphs (b), (c), and (d) of 20 CFR
> 404.1545 and 416.945.  Only after that may RFC be
> expressed in terms of the exertional levels of work, sedentary,
> light, medium, heavy, and very heavy.

S.S.R. 96-8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339

F.Supp.2d 480, 490 (W.D.N.Y. 2004).  An administrative RFC finding can

withstand judicial scrutiny only if there is substantial evidence in the record

to support each requirement listed in the regulations.  *Martone*, 70 F.

Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10

(E.D.N.Y. 1997).

      In this instance the ALJ concluded that despite his conditions,

plaintiff has the RFC to perform a full-range of sedentary work, specifically finding that plaintiff is capable of 1) lifting and/or carrying ten pounds occasionally and less than ten pounds frequently; 2) standing and/or walking for about two hours in an eight-hour workday; and 3) sitting for about six hours in an eight-hour workday, with no repetitive bending or stooping.[10]  AT 19.

The ALJ's RFC finding draws the support of substantial evidence. *See* AT 18-19.  In his report from May of 2005, Dr. Carton opined that plaintiff was not capable of working as a corrections officer but could engage in sedentary activity, with the avoidance of any lifting or repetitive bending and the option to sit or stand and change positions.[11, 12]  AT 121.

---

[10]      The regulations define sedentary work as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).  In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* S.S.R. 83-10, 1983 WL 31251.

[11]      Although the ALJ did not include a sit/stand option as part of plaintiff's RFC, "the regulations do not mandate the presumption that all sedentary jobs . . . require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat of a transcontinental flight.  No such counterintuitive

In September of 2005, Dr. Alvarez opined that plaintiff was able to return to his work in a sedentary capacity, sitting most of the time with short periods of standing and walking permitted and no inmate contact.  AT 165.

Dr. Curtis, plaintiff's treating physician, characterized plaintiff's disability status in November of 2005, as "marked partial with a [ten] pound weight restriction," AT 207, adding "[n]o excessive lifting, bending, stooping, or twisting.  Must be able to change positions freq[uently]."  AT 209.  Similarly, in January of 2006, Dr. Naughten found no limitation with respect to seeing, hearing, talking, sitting, standing, pushing, pulling, or reaching, and mild to moderate limitations walking and climbing, further noting only moderate limitations with respect to lifting and carrying.  AT 224.  Dr. Catania, one of plaintiff's pain management specialists, encouraged plaintiff in June of 2006, to either walk or utilize a stationary

---

presumption exists."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

[12]    Dr. Carton also opined that in the context of workers' compensation benefit guidelines, plaintiff exhibited a temporary, marked partial disability.  AT 121.  An opinion rendered in the context of a workers' compensation claim, however, is not controlling with respect to a claim for DIB under the Act.  *See Gray v. Chater*, 903 F.Supp. 293, 299, 301, n.7, 8 (N.D.N.Y. 1995) ("The issue of disability for purposes of workers' compensation is different from the issue of disability for purposes of [DIB] and SSI benefits.  Workers' compensation determinations are directed to the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the . . . Act.  Moreover, there is no such thing as partial disability for purposes of the Social Security Act.") (citations omitted).

bike each day for aerobic activity for up to forty-five minutes at a time, AT 252, a recommendation that is not inconsistent with the ALJ's finding that plaintiff can perform sedentary work. *See Kovalcik v. Barnhart*, 2003 WL 22937774, at *13 (D.Del. Sept. 29, 2003) (explaining that claimant's physicians' recommendation that claimant engage in aerobic exercise was consistent with the ALJ's finding that she could at least perform sedentary work).

In sum, having carefully reviewed the record, I conclude that the ALJ adequately explained her RFC determination and properly inferred plaintiff's ability to perform sedentary work, and that substantial evidence supports that conclusion.

### b)   Onset Date

As a general rule, a claimant's allegation regarding the date of onset must be accepted provided it is consistent with medical evidence in the record. S.S.R. 83-20, 1983 WL 31249, at *3.  Where the ALJ determines that the date of onset is other than what the claimant alleges, the ALJ has an affirmative obligation to "adduce substantial evidence to support his [finding]." *Moses v. Sullivan*, No. 91 Civ. 6980, 1993 WL 26766, at *4 (S.D.N.Y. Jan. 19, 1993).

Having found that the ALJ's RFC determination, which was pivotal to the disability assessment, was proper, I similarly conclude the ALJ's determination of the onset date of plaintiff's disability was appropriate. As explained above, on October 31, 2007, plaintiff attained fifty years of age, resulting in a change of his age category under the grid to that of "an individual closely approaching advanced age."  *See* 20 C.F.R. § 404.1563(d).[13]  Plaintiff's age at the alleged time of the onset of disability was forty-seven.  The grid classifies a forty-seven-year-old person as a younger person.  20 C.F.R. § 404.1563(c).  The grid does not consider a person forty-seven years old that can work a full-range of light sedentary work, like plaintiff, to be disabled.  *See Muir v. Astrue*, No. 8:07-CV-727-T-24-TBM, 2009 WL 799459, at *7 (M.D.Fla. March 24, 2009).

On October 31, 2007, plaintiff turned fifty years old.  Under Rule 201.21 of the grid, a younger person under the age of fifty, with plaintiff's RFC, age, education, and past work experience is not disabled.  Upon plaintiff attaining the status of a person closely approaching advanced age

---

[13]      The regulation reads, in pertinent part, as follows: "Person closely approaching advanced age. If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  20 C.F.R. § 404.1563(d).

(fifty through fifty-four) on October 31, 2007, however, applying Rule 201.14 the ALJ correctly determined that he was disabled as of that date. *See Muir*, 2009 WL 799459, at *7 (finding that once a younger person with the RFC for a full-range of sedentary work turned fifty years old, he was properly found to be disabled upon obtaining the status of a person closely approaching advanced age).  Accordingly, the ALJ properly found that plaintiff was not disabled at any time from February 3, 2005 through October 30, 2007, and correctly determined that plaintiff became disabled on October 31, 2007, when he reached fifty years of age.[14]  *See Shird v. Astrue*, No. 2:08-CV-472 -FtM-29 SPC, 2009 WL 1657368, at *16-17 (M.D.Fla Jun. 10, 2009).

### 3.   Credibility

Plaintiff additionally maintains that the ALJ failed to properly evaluate his subjective allegations of pain and disabling symptoms. Corbett contends that the ALJ failed to apply the factors set forth in S.S.R. 96-7p, 1996 WL 374186 and *see also* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi), and that his work record should have weighed

---

[14]     Coincidentally, in December of 2007, while noting that plaintiff began his treatment at a marked partial disability status, Dr. Curtis opined his disability was "probably permanent."  AT 290.

substantially in his favor in the ALJ's credibility assessment.  The

Commissioner responds by arguing that the ALJ properly considered

plaintiff's allegations of pain and functional limitations and reasonably

found that they were not entirely credible.

An ALJ must take into account subjective complaints of pain in

conducting the five-step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus v, Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70

F.Supp.2d at 151 (citing *Marcus*).  Rather, an ALJ retains the discretion to

evaluate a claimant's subjective testimony, including testimony concerning

pain.  *See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In

deciding how to exercise that discretion, the ALJ must consider a variety

of factors which ordinarily would be relevant on the issue of credibility in

any context, including the claimant's motivation and the medical evidence

in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, J. and Smith, M.J.) (citing

*Marcus*, 615 F.2d at 27-28).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Sweatman*, 1998 WL 59461, at *5.

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[15]  *Barnett*, 13 F.Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including 1) his or her daily activities; 2) the location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) additional measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective

---

[15]        In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

medical evidence, and any other factors deemed relevant, an ALJ may

accept or reject a claimant's subjective testimony.  *Martone*, 70 F.Supp.2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must state the basis for doing so

with sufficient particularity to enable a reviewing court to determine

whether those reasons for disbelief were legitimate, and whether the

determination is supported by substantial evidence.  *Martone*, 70

F.Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F.Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*,

728 F.2d 588, 591 (2d Cir. 1984).

With respect to his capabilities, plaintiff testified that he can sit for

fifteen minutes before his pain will increase.  AT 319-20.  Corbett

estimated that he can walk a couple of blocks and for ten to fifteen

minutes before having to stop and rest.  AT 89, 322.  Plaintiff typically lies

down for a total of two to two-and-a-half hours in an eight-hour day and

stated that he cannot lift much.  AT 320-21.  Corbett testified that he

drives occasionally, but that fifteen minutes of driving causes him

discomfort.  AT 88, 321.  Plaintiff testified that walking and snow-blowing are the most physical activities in which he engages.  AT 322.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  AT 21.  In support of her determination, the ALJ recounted plaintiff's daily activities, noting that plaintiff tries to walk on a daily basis for exercise, attends his daughter's basketball games, visits his parents, performs household chores, and occasionally shops.  AT 21; *see* AT 84, 93, 318, 322.  While acknowledging plaintiff's testimony that he is no longer able to ride motorcycles and all-terrain vehicles, AT 20 and *see* AT 87, 322-23, the ALJ also noted that plaintiff snow-blows his driveway with a riding lawn tractor.  AT 20, 21; *see also* AT 319.  In addition, plaintiff testified that he showers and tends to his personal hygiene.  AT 84, 318.

The ALJ noted that plaintiff has osteoarthritis of the knees and left ankle, causing him pain and restricting his ability to do things.  AT 20; *see also* AT 316 (plaintiff testified that he has osteoarthritis in his knees, ankles, and shoulders, which in combination with his lower back

impairment limit him from "[p]retty much everything.").  The ALJ went on to observe, however, that plaintiff's back pain was his most significant problem and detailed its intensity.  AT 20.  Plaintiff described his back pain as continuous and estimates its usual intensity as a six or seven on a scale from one to ten.  AT 91-92, 317.  Corbett further explained that his pain has approached an intensity of ten between ten and twelve times over the last three years.  AT 317.  Consistent with plaintiff's testimony, the ALJ noted that plaintiff's pain "just comes on depending on the day." AT 20; *see* AT 317-18.  Plaintiff also stated, however, that any extended sitting, walking, standing, or bending aggravated his pain.  AT 92.

The ALJ further noted plaintiff's testimony that some of his medications cause "a real funny head feeling" and prevent him from driving.  AT 21, 326; *see also* AT 92 (citing drowsiness and light-headedness as side effects of medication).  She also noted that plaintiff has attempted to address his back injury with physical, heat, massage, and aqua therapy as well as ultrasound and low back injections, but those treatment regimens have provided only limited relief.  AT 20; *see* AT 312, 323.

From the foregoing it is apparent that the ALJ properly considered

40

the factors set forth 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi) and 416.929(c)(3)(i)-(vi) in assessing plaintiff's credibility and adequately explained her reasoning, which finds the support of substantial evidence, for rejecting plaintiff's statements as not fully credible.

In addition to the factors noted above, in assessing a claimant's contention of pain, S.S.R. 96-7p directs an ALJ to consider, *inter alia*, a claimant's "prior work record and efforts to work."  S.S.R. 96-7p, 1996 WL 374186, at *5.  "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."  *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (citations omitted).  Plaintiff testified that he has "always been a hard worker" and that "if [he] thought he was able to work, [then he] would be working," but he stated that he cannot work.  AT 326.  Indeed, plaintiff's regular wages date back to 1977.  *See* AT 59.  The ALJ, however, did not ignore plaintiff's work record, in fact observing that "[i]n his favor, [he] has an excellent work history . . . ."  AT 21.  Nonetheless, the ALJ found that "the opinions of the competent medical examiners of record," *see* AT 121, 165, 207, 209, 224, 252, rebutted the favorable presumption of credibility created by plaintiff's work record.  AT 21.  Based upon the entirety of the

41

examination of plaintiff's credibility, I find that the ALJ accorded proper weight to plaintiff's work record in rendering her credibility finding.  *See Corson v. Astrue*, 601 F.Supp.2d 515, 534 (W.D.N.Y. 2009).

IV.   SUMMARY AND RECOMMENDATION

Based upon a careful review of the record in this case, I conclude that the ALJ properly found that plaintiff did not meet Listing 1.04(A), that she also properly determined plaintiff's RFC, a finding which is supported by substantial evidence of record, and that in arriving at that RFC determination and her ultimate finding of no disability prior to October 31, 2007, the ALJ properly rejected plaintiff's subjective complaints of pain as not entirely credible and adequately explained her rationale for that rejection.  Accordingly, it is hereby respectfully

RECOMMENDED, that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability be AFFIRMED, and plaintiff's complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28

U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 72; *Roldan v. Racette*, 984 F.2d 85

(2d Cir. 1993).

David E. Peebles
U.S. Magistrate Judge

Dated:      December 7, 2009
            Syracuse, NY